BERTHA M. MORELAND *vs*. HARRY VOMILAS.

Cumberland.     Opinion January 31, 1929.

494

*Berman & Berman*, for plaintiff.
*Francis W. Sullivan*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, BARNES, PATTANGALL, JJ.

BARNES, J.    In the Superior Court for Cumberland County, at the April term, 1928, trial was had on a suit for injuries to the person, and a jury verdict for $2,500.00 returned.

At the same term, on the second day after the filing of the verdict, defendant presented a motion to the Court praying that he set aside the verdict and grant a new trial.

The motion was argued during the same term and decision reserved.

The said April term was finally adjourned on the 19th of May; but at that time no decision on the motion for a new trial had been rendered.

The Superior Court for Cumberland County, by fiat of the legislature, shall hold terms annually in April and in May, as well as in seven other months.

On account of the abundance of litigation awaiting its day in court at the said April Term, the work of that term progressed for forty days, extending through the first two-thirds of the month of May.

And the May term of the court began on the first Tuesday of May, as provided by law.

During the May term judgment in this case was recorded, as follows: "Remittitur for all in excess of Fifteen Hundred Dollars ($1,500.00) ordered on June 11, 1928, being the thirty-fifth day of this Term."

To this judgment exceptions were seasonably taken and allowed.

The motion for new trial was on grounds specified, namely, that the verdict was against the law and the charge of the Court; against the evidence, and the weight of evidence, and because the damages were excessive.

If the judgment of the Court, as recorded, is a lawful judgment, the plaintiff is constrained to accept a less sum in damages than was awarded by the jury, or to undergo the burden and expense of a new trial.

Her exceptions present two questions:

1. Has the Superior Court for Cumberland county authority to order remittitur damnum, or briefly remittitur, remission of the excess in a verdict over and above what the verdict in law, under the evidence, would be?

2. Since no decision was rendered during the April term, nor in the vacation between the April term and the May term following, had the Court, after the adjournment of the April term, and after the passage of many days while continuously busied in the work of the May term, jurisdiction over the case at bar, and authority to act therein?

Taking the questions in their order, we first consider whether the Superior Court had authority to order remittitur.

By statute, the Court could, at the proper time, if convinced that it was just, order a new trial.

Could it go further and order a remittitur, and if no remission a new trial?

Plaintiff contends it had not such power.

The Superior Court is a statutory court, and at its establishment it was endued with certain powers by its creator, the Legislature, some of which are common law powers.

In Sec. 10 of Chap. 151, P. L. of 1868, the act establishing the Superior Court for Cumberland county, language capable of broad interpretation is used relative to its jurisdiction and authority.

That section reads, in part, "the provisions of law relative to the jurisdiction of the Supreme Judicial Court in said county over parties, the arrest of persons, attachment of property, the time and mode of service of precepts, proceedings in Court, the taxation of costs, the rendition of judgments, the issuing, service and return of executions, and all other subjects, are hereby made applicable

and extended to said Superior Court, in all respects, except as far as they are modified by the provisions of this act; and said Superior Court is hereby clothed as fully as the Supreme Judicial Court with all the powers necessary for the performance of all its duties."

"Proceedings in Court," are nowhere else in the Act mentioned by way of definition or limitation of the Judge's authority to rule on a motion for a new trial, or regarding the time within which he should pronounce his decision, and the grant to the Superior Court of jurisdiction over "all other subjects," as comprehensive as in the Supreme Judicial Court is language subject to broad interpretation, as before suggested.

Trial courts, at common law, in the exercise of their discretion may grant a new trial, when upon motion therefor it appears that the cause of new trial does not arise out of any illegal or erroneous act of the Court.

And at an early day in the experience of Maine courts it was so ruled. *Hawes* v. *Baker*, 6 Me., 72; *McLellan* v. *Crofton*, 6 Me., 307; *Bishop* v. *Williamson*, 11 Me., 495; *State* v. *Call*, 14 Me., 421; *Simpson* v. *Simpson*, 119 Me., 14.

"It can not be claimed as a matter of right. And in such cases, it may be done upon such terms or conditions imposed, as the Court may consider reasonable. And such appears to have been the practice." *Tuttle* v. *Gates*, 24 Me., 395.

In proper cases remittitur has long been approved, it being considered that an order on plaintiff to remit a part of damages found to be excessive is a condition which may be imposed by the trial judge to obviate the necessity for a new trial. *Smith* v. *Putney*, 18 Me., 87; *Jewell* v. *Gage*, 42 Me., 247.

It is a well settled practice in this State, and it is our practice for the Law Court to hold that damages are to be found by the jury, and to return the cause in such case for new trial for the assessment of damages only. *McKay* v. *Dredging Co.*, 93 Me., 201, L. R. A. 1915 E., 250.

The authorities generally uphold the power of the trial court, in its discretion, to grant a new trial of a part only of the issues in cases where such power may be exercised by the appellate court; courts frequently stating the rule as to the power to grant a new trial in general terms, implying that it is applicable to either the

trial or appellate court. *Re. Everts*, 163 Cal., 449, 125 Pac., 1058; *Smathers & Co.* v. *Hotel Co.*, 167 N. C., 469, 83 S. E., 844; *Seccomb* v. *Ins. Co.*, 4 Allen, 152; *Woodward* v. *Horst*, 10 Iowa, 120.

When the only issue remaining is the amount of damages, the principle declared in *McKay* v. *Dredging Co.*, supra, is upheld with convincing logic in *Simmons* v. *Fish*, 210 Mass., 563; *Lisbon* v. *Lyman*, 49 N. H., 553; *Zaleski v. Clark*, 45 Conn., 397; *Land Co.* v. *Neale*, 78 Cal., 63; *Top* v. *Standard Metal Co.*, 47 Ind. App., 483; *Burnett* v. *Mills Co.*, 152 N. C., 35, 67 S. E., 30; *Goss* v. *Goss*, 102 Minn., 346, 113 N. W., 690; *Lumber Co.* v. *Branch*, N. C., 73, S. E., 164; *Glass Co.* v. *R. Co.*, 76 N. J., L. 9; *Cramer* v. *Barmon*, 193 Mo., 327; *Austin* v. *Langlois*, 83 Vt., 104; *Clark* v. *R. Co.*, 33 R. I., 83. The case last cited seems especially in point, since it upholds the authority of a superior court, under powers granted by constitution and statute in substance the same as ours.

But when the amount properly recoverable is not definitely ascertainable by computation, as may be the case when to be awarded for injuries negligently inflicted on the person of the plaintiff, a conflict has arisen in the courts of the land.

In the case at bar it is assumed that the Judge concluded the damages were excessive because the jury was influenced by prejudice or some other improper motive, and that he reduced the verdict to as small an amount as any other jury on the same evidence would probably assess in plaintiff's favor, or as the jury which heard the case, had it functioned as by law required, would probably have assessed the same.

The discretion of the trial court, as a determinant de novo, in fixing the amount of money constituting a fair equivalent for the wrongs done to plaintiff, was not made the basis for the judgment complained of, but his discretion respecting the amount which the jury, had they viewed the case properly, would have awarded plaintiff, or the amount which another jury would probably award, resolving reasonable doubts in that regard against the party favored with the option, was made the basis.

Under such assumption the Court, in *Heimlich* v. *Tabor*, 123 Wis., 565, has said, "The practice of treating fatally defective verdicts — the right to recovery being unquestioned — so as not to prejudicially invade the rights of either party, and yet terminate

the litigation without the expense of another trial, is in the interests of public and private justice.

It is a great boon to the parties directly interested, and to the public as well, upon whom, in a great measure, the burden of judicial administration rests. It has become the judicial custom in case of a fatally excessive verdict where the right to recover is clear, whether the error is attributable to perversity or not, and whether the defendant does or does not consent to permit the plaintiff to terminate the controversy without the expense of a new trial by consenting to take judgment for an amount sufficiently under that named by the jury, to cure such error in the judgment of the Court; and also to permit the defendant in such a situation to terminate the litigation, whether plaintiff is willing or not, by consenting to judgment for a sum sufficiently less than the verdict to, in the judgment of the Court, cure the error. That rule with a legitimate basis therefor, has been evolved in the course of years of judicial administration as a most valuable means of 'promptly and without delay' terminating disputes between parties to the end that, so far as due course of law will permit, wrongs may be remedied or prevented without that financial exhaustion which tends to make men surrender valuable rights rather than to persist in efforts to secure them by legal means."

The conflict of judicial opinion is well set out in a note to *Tunnel Mining Co.* v. *Cooper*, 50 Colo., 390, 39 L. R. A. (N. S.), 1064. See also 20 R. C. L., 315.

In some jurisdictions statute law, since the date of opinions cited has been substituted for the discretion of the court, but the principle obtains, unchanged.

We think the rule that the trial court may issue an order denying motion for a new trial upon condition that the party awarded a verdict by the jury will remit a certain sum from the verdict, although the amount remaining is not capable of definite computation from the evidence is the sounder rule, and that the Superior Court for Cumberland county has this authority.

Hence there is no merit in the first exception.

The position of plaintiff in support of her second exception is that, having failed to rule on the motion for a new trial at the term of trial, or within the period of vacation intervening between the

term of trial and the beginning of the next regular term, the Judge had no right or authority, after having formally adjourned the term of trial and after having taken up the work of the subsequent term, thereafterward to rule on the motion.

If her position is tenable the verdict of the jury must stand.

The statute under which the Judge acted, Chap. 70, P. L. of 1923, is as follows: "Any justice of the supreme judicial court or of a superior court may set aside a verdict and grant a new trial in a civil case tried before him, when in his opinion the evidence demands it. But such verdict shall not be set aside by a single justice when two verdicts have been rendered against the applicant.

A motion to so set aside a verdict must be filed at the same term at which such verdict is rendered and shall be heard by the presiding justice either in term time or in vacation at his dscretion; if such action is heard in term time the presiding justice may render his decision in vacation."

"In this country all courts have terms and vacations. The time of the commencement of any term, if there be half a dozen a year, is fixed by statute, and the end of it by the final adjournment of the court for that term." *Bronson* v. *Schulten*, 104 U. S., 410.

Vacation is defined as being "all the time between the end of one term and the beginning of another; it begins the last day of every term as soon as the court rises."

It is also defined as the "intermission of judicial proceedings; the recess of courts; the time during which courts are not held." *Brown* v. *Hume*, 16 Gratt (Va.), 456.

The intent of the legislature in its use of the word "vacation" is what we are seeking. Is it to be understood that when by statute a judge is authorized to render judgment in vacation, he is limited to the time between final adjournment of a term and the beginning of the next term in regular course?

It is presumed that a legislature fixing the times and seasons of court action, within its powers, speaks with definiteness. When prescribing the action of courts the words used in legislative acts are to be interpreted according to their legal meaning, their technical sense; but many words commonly used, in different applications have different meanings.

The subject matter, the circumstances of their use, the require-

ments of human activity, the demands of public welfare may determine the sense in which a word is used.

"We are to consider the Legislature when dealing with subjects relating to courts and legal process, as speaking technically, unless from the statute itself it appears that they made use of words in a more popular sense." *Brayman* v. *Whitcomb*, 134 Mass., 525. "Legislators, in the statutes which they enact, frequently use technical words in their common and popular meaning." *Mace* v. *Cushman*, 45 Me., 250.

"There can not be, we think, a fixed and definite meaning given to the word vacation.

That it ordinarily means the time between terms is undoubtedly true. But whether this meaning should be given to the word in any particular instance depends upon the subject matter, and the necessity which exists that some other meaning should be adopted." *Thompson* v. *Benepe*, 67 Iowa, 79.

At common law the judges exercised in vacation only a limited power, such as ordinarily was conducive to expediting business actually pending in court. 3 Chitty Gen. Pr. 19.

Under the early English statutes, which became a part of the common law of the United States, judges were enabled to exercise powers which they had not theretofore assumed, such as to hear motions and petitions and to make rules and orders thereon. 23 Cyc., 543, 15 R. C. L., 522; *Key* v. *Paul*, 61 N. J. L., 133, 38 Atl., 823.

Recognizing the necessity of granting to judges the right to speak authoritatively in vacation upon many matters, or multiplying the number of courts, such acts as the statute under discussion have been passed.

In many instances the amount, variety and conflict of testimony heard by a judge, require the transcription of the testimony into type, and this, with a mass of exhibits, frequently demands long hours of painstaking, intensive study before a just and proper decision can be rendered.

In the case at bar the requirements of his office oblige the judge to hold annually nine terms of court, each term opening on the first Tuesday of the nine months beginning with September. And the business of that court in 1923 required, as it now requires, that the

terms, whether civil or criminal, overrun the calendar month and encroach upon the term time set for the succeeding month.

The interpretation sought by the plaintiff would render it unavoidable that the judge, at times, should postpone the work of a term while he should devote days to the study of a case such as the one before us. It is agreed that the plaintiff is hurt by postponement of the decision in her case.

On the other hand it is urged that the interests of the public would be better served by the adoption of a reasonable definition of the expression "in vacation."

In a somewhat analogous situation the supreme court of Missouri held, in *Bamberge* v. *Graves*, 126 S. W., 749, that when by statute an appeal bond might be approved in vacation, but not later than 10 days after adjournment, and when that time carried over into the next regular term of the court, it was in the power of the court, during the subsequent term, to approve the appeal bond.

In *State* v. *Denis*, 40 S. D., 219, 167 S. W., 15, on the contention that "vacation" should be limited to the period succeeding adjournment of a term and the beginning of another term, the court decided, "We do not think such a limited meaning is consistent with the theory upon which our system of courts and their work is based. The word 'vacation,' when applied to our circuit courts, should include any period, whether one day or more, during which court might legally have been held, which period elapses between one day's session of court and another day's session, even though both of such days may be days of the same term."

See also *Coe* v. *Hallam*, 173 Ill., 461.

It has been held that a period elapsing between sessions of a term, where adjournment for several days is had, may be considered "in vacation." *Hunnelberger-Harrison Lumber Co.* v. *Kuner* (Missouri) 117 S. W., 42.

*Thompson* v. *Benepe*, supra, was a case where, under statute, injunction might be ordered by the court (in term time) or by the judge (in vacation) ; and on the fifth day of a term an injunction was granted by the judge (as in vacation).

On motion to dissolve the injunction, on the theory that in term time the judge can do no act which he is empowered to do only in vacation the court held that, there being no evidence that the act

502

was done during a session of the court it should stand: that, "the word 'vacation,' as used in the statute, should be construed to mean such times as the court is not actually in session."

All decisions available or to which our attention is directed, however, stop short of declaring that a vacation following one term of court can be extended beyond adjournment of the succeeding term. Such extension is not authorized in this jurisdiction.

That the Superior Court for Cumberland County may be in almost constant session, by the overlapping of its terms, if it works to the detriment of litigants is a situation properly referable to the Legislature.

Interpreting the authority given any justice of supreme or superior court in vacation to render judgment in any case heard by him in term time, this Court has decided — "Undoubtedly the enactment means that he may in vacation render judgment in a matter or cause heard by him in term time next preceding such vacation.

"Does this give authority to the presiding Justice, or the court, to render or enter judgment at the term following the vacation? We think not." *Robinson, Appellant*, 116, Me., 125.

In agreement with this recent opinion we hold that the ruling in the case at bar, could have been rendered after final adjournment of the April term; but, to be of any avail, must be rendered before the work of the May term was entered upon.

From the record it appears that the ruling was rendered during the May term.

Hence it was of no effect; was null and void.

The second exception is sustained.

*Judgment on the verdict.*